[No. 84003-2. En Banc.]
Argued March 8, 2011. Decided October 13, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. ALBERTO
PEREZ-VALDEZ, *Petitioner*.

*David N. Gasch* (of *Gasch Law Office*), for petitioner.

*James L. Nagle, Prosecuting Attorney,* and *Joseph M. Golden* and *Teresa J. Chen, Deputies,* for respondent.

¶1 OWENS, J. — Alberto Perez-Valdez challenges two evidentiary decisions made by a judge of the Walla Walla County Superior Court during a trial that resulted in his conviction for one count of second degree rape of a child and one count of third degree rape of a child. He also challenges

the trial court's denial of his motions for a mistrial based on a statement made by a state witness relating to the credibility of the victims. We hold that the trial court did not abuse its discretion in making these decisions. We therefore affirm the jury's conviction of Perez-Valdez.

## FACTS

¶2 Perez-Valdez, with his wife, adopted several children, including A.V. and S.V. The girls were both about four years old when the Perez-Valdezes adopted them. In December 2004, when they were 13 and 14 years old, respectively, S.V. and A.V. both reported that Perez-Valdez was sexually abusing them. The girls testified at trial that he forced them to have sexual intercourse several times per month over the course of several years, the last incident being in December 2004.

¶3 Perez-Valdez denied the allegations and testified at trial that he did not rape or otherwise sexually assault either S.V. or A.V. His defense was centered on a theory that the girls were lying. To that point, several witnesses testified about the reputation of the girls for untruthfulness. The defense also introduced expert medical testimony that the specific rape allegations were statistically unlikely to have occurred based on the conditions of the girls' hymens and the fact that neither had become pregnant during the course of the alleged assaults.

¶4 Perez-Valdez also sought to introduce evidence that S.V. and A.V. committed arson at a subsequent foster home to show that the girls were willing to take extreme actions to be removed from homes where they did not like the rules, potentially including lying about rape. In order to lay the foundation for this, the defense presented evidence that the girls did not like some rules at the Perez-Valdez home, such as chores and dating restrictions. The defense also elicited testimony that the girls knew that a sexual abuse allegation would get them removed from the home because, years

earlier, the State removed another girl, S.V.'s biological sister, from the home based on that girl's allegations that Perez-Valdez sexually abused her.[1] The trial court, however, barred questioning about the arson, explaining to defense counsel:

> We are not going into the burning of the house. . . . [Y]ou haven't really shown that she just hated this house. . . . The link just isn't there. And it is just so prejudicial. And it's prejudicial to the fact-finding process, not just to her. . . . And you can certainly, you are going to be able to make that argument and you will make it until you are blue in the face, that she did this to get out of the house. But you don't have to say she burned down a house to make that argument.

1 Verbatim Report of Proceedings (VRP) at 108; *see id.* at 194 (The court again concluded that "[the arson is] a collateral issue."). Still, the defense was able to establish and make the argument that the girls were removed from their subsequent foster placement because the girls did something serious in order to be removed.

¶5 The State called Karen Patton, the Child Protective Services (CPS) investigator assigned to this case, to testify at trial. During cross-examination, Patton stated her opinion about the victims' credibility. The testimony came in response to defense counsel's question during an exchange about the significance of S.V. and A.V.'s familiarity with their parents' bedroom:

> [Defense Counsel] Q. Are you telling me only children sexually abused would know what their mother and father's room looked like if they had been in there five, six, seven or eight years?
>
> [Patton] A. No, not at all . . . . I'm saying these children knew what the parents' bedroom looked like, and in addition, they

---

[1] The defense presented evidence that implied that this biological sister, who was removed from the Perez-Valdez home, might have lied about the abuse. S.V.'s biological sister testified at trial. Her testimony was primarily about S.V.'s disclosure to her of the abuse, which led to the present case. She did testify that she was removed earlier from the Perez-Valdez home because Perez-Valdez sexually abused her.

were in there several times being sexually abused by their father.

Q. Assuming they are telling you the truth?

A. They are telling me the truth.

2 VRP at 301-02. Defense counsel immediately objected and moved for a mistrial. The trial court sustained the objection, saying, "I'm going to ask that the jury disregard her comment." *Id.* at 302. But the court denied the motion for a mistrial. Perez-Valdez moved twice more for a mistrial, before and after the verdict. The trial court denied both motions, explaining at one point: "[Patton] made a quick statement. I told [the jury] to disregard it. . . . I'm not convinced that that's tainted this jury." *Id.* at 324. The jury was further instructed to "disregard any evidence that either was not admitted or that was stricken by the court." Suppl. Clerk's Papers at 93.

¶6 Finally, the defense called several witnesses who testified to Perez-Valdez's reputation for good moral character. The State did not object to this testimony at the time it was offered but, the following day, moved to strike the character testimony and requested an instruction that the jury disregard it. The defense argued that the State's objection was untimely. The State countered that it would forgo its motion to strike the testimony on the condition that the defense "be precluded from [arguing] about moral character." 2 VRP at 367. Defense counsel did not expressly agree but suggested this was of minimal concern. Absent objection to the proposal, the trial court accepted the compromise.

¶7 The jury returned a guilty verdict on both counts of second and third degree rape of a child. Under indeterminate sentencing for sex offenders, Perez-Valdez was sentenced to 136 months to life. On direct appeal, the Court of Appeals affirmed the conviction. *State v. Perez-Valdez*, noted at 153 Wn. App. 1011, 2009 WL 3823243, 2009 Wash. App. LEXIS 2857. This court granted discretionary review

on all issues. *State v. Perez-Valdez,* 168 Wn.2d 1031, 230 P.3d 1061 (2010).

## ISSUES

¶8 Did the trial court err in refusing to (1) allow the defense to submit evidence of a bad act by the alleged victims to show that the girls had motive to falsely accuse Perez-Valdez, (2) declare a mistrial after a witness offered opinion testimony as to the victims' veracity, and (3) allow the defense to reference general character evidence about Perez-Valdez in its closing argument after the State's untimely objection?

## ANALYSIS

### A. *Standard of Review*

■■ ¶9 This court reviews trial court decisions on the admission of evidence for abuse of discretion. *State v. Bashaw,* 169 Wn.2d 133, 140, 234 P.3d 195 (2010). We also review the decision of whether a statement is so prejudicial as to require a mistrial for abuse of discretion. *State v. Weber,* 99 Wn.2d 158, 166, 659 P.2d 1102 (1983).

### B. *Evidence of Crimes, Wrongs, or Acts To Prove Victims' Motive To Lie*

¶10 At several points during his trial, Perez-Valdez sought to introduce evidence that S.V. and A.V. committed arson in the foster home where they lived after the State removed them from the Perez-Valdez home. There was no question the misconduct occurred, as both girls were convicted in juvenile court. Perez-Valdez argued that the arson evidence was relevant to establish their motive to falsely accuse him of rape. His theory was that, just as the girls committed arson to get removed from their foster home, they also falsely accused him of rape to get out of their adoptive home. Accordingly, Perez-Valdez argued that the

arson evidence was relevant and admissible under the rules of evidence. The trial court gave the defense leeway to lay the foundation for the arson evidence and several times reconsidered whether to admit it, but the trial court ultimately found that the prejudice of the arson substantially outweighed its probative value.

¶11 Perez-Valdez now argues that the arson evidence should have been admitted pursuant to ER 404(b). However, ER 404(b) is a rule of exclusion, not a rule of inclusion. The rule prohibits "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith"; but it does not apply when such evidence is offered for other purposes, including "proof of motive." ER 404(b). Even where such evidence is admissible despite ER 404(b), the trial court retains discretion to preclude it if it is irrelevant "to prove an element of the crime charged" or if the prejudicial effect substantially outweighs the probative value of the evidence. *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002); *see* ER 402, 403.

¶12 Here, because the arson evidence was not proposed to show conformity of action with personal character, but instead to show a motive for false accusation, it was not precluded by ER 404(b). Still, we defer to the trial court's discretion to bar the evidence as irrelevant or unduly prejudicial. A trial court's evidentiary ruling is an abuse of discretion only if it is "manifestly unreasonable or based upon untenable grounds or reasons." *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). We do not find such a basis to overturn the trial court's judgment in this matter.

¶13 The record indicates careful consideration by the trial court of whether to admit the arson evidence. The trial court conditionally granted the State's motion in limine to prevent the defense from raising the incident, explaining:

If there is some testimony that [S.V. and A.V.] just couldn't wait to get out of the home of the defendant, and boy, they would do just about anything to get out of there, then maybe the fact that

they did do something like this to get out of another foster home I'll take a long hard look at it. But we have to lay that foundation first. . . . So until I hear something like that, seems like it's way premature, and certainly prejudicial.

Suppl. VRP at 113-14. Ultimately, the trial judge found that the defense failed to adequately lay the foundation for the evidence:

[Y]ou haven't really shown that she just hated this house. Was she unhappy? She is unhappy as half the teenaged kids in any house are. Everybody is unhappy with the parents. They don't like the rules, they don't like this or that, but we don't put in evidence of burning a house down. The link just isn't there.

1 VRP at 108; *see id.* at 110 ("[T]o parlay [the arson] into what motivates this crime is simply a stretch.").

¶14 Although another trial judge might well have admitted the same evidence, the decision to not allow admission of the arson evidence is neither manifestly unreasonable nor based on untenable grounds or reasons. It is of legitimate concern that the arson was too removed from a false accusation of rape to necessarily be considered evidence of motive to lie. It is reasonable to conclude that the defense did not establish excessive hatred by the girls of their subsequent foster home to lay the foundation that the arson was related to an effort to be removed from the home. *Cf. State v. Lubers*, 81 Wn. App. 614, 623, 915 P.2d 1157 (1996). Moreover, the defense was still able to argue its theory of the case, including by presenting substantial evidence about S.V.'s and A.V.'s reputations for untruthfulness. Yet the jury, which saw the girls and all other witnesses testify, was convinced of Perez-Valdez's guilt.

¶15 Perez-Valdez alternatively argues that the same evidence was admissible to impeach Virginia Eileen "Ginger" Burnette, the foster parent at whose home the girls set a fire. *See* ER 607. Under examination by defense counsel, Burnette rejected the idea the girls had taken extreme measures to get out of her home. Still, her answer was not

a direct "no." Rather, Burnette qualified her response, saying, "In my opinion, and this is my opinion, I would say, no. Because things that foster children do we're trained to not be shocked at." 1 VRP at 192. Perez-Valdez sought to impeach Burnette by juxtaposing her testimony with the arson evidence. After the trial court again refused to allow specific questioning about the arson, the defense elicited acknowledgment from Burnette that the girls did something serious enough that caused the State to remove them from her home. She said, "Every time the State moves a child they think it's a serious reason. . . . It's always serious." *Id.* at 196-97. Because of the clearly subjective and qualified nature of her characterization of the incident, evidence of the arson arguably would not directly contradict her statement. The trial court deemed the arson to be a collateral issue, and a "witness cannot be contradicted on a collateral matter." 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 607.17, at 407 (5th ed. 2007).

¶16 Thus, we again arrive at the same point of deference in our analysis. While the rules of evidence may have allowed for the arson evidence to come in, the trial court did not abuse its discretion in finding it collateral to Burnette's testimony. Nor did the trial court abuse its discretion by finding the arson evidence too remote and unduly prejudicial and therefore inadmissible when offered to show the victims' motives, as discussed above.

## C. *Motion for a Mistrial*

¶17 A witness's expression of personal belief about the veracity of another witness is inappropriate opinion testimony in criminal trials. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). Admission of such testimony may be reversible error. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). Here, the trial court did not admit the challenged testimony. Rather, the court found that the State's witness, Patton, gave improper testimony when she stated that "[the victims] are telling me

the truth." 2 VRP at 302. Upon objection by the defense, the trial court immediately instructed the jury to disregard the statement. *Id.* The question before this court is whether the statement was so egregious that it necessitates a mistrial. *See* CrR 7.5(a)(5), (6).

¶18 Courts look to three factors to determine whether a trial irregularity warrants a new trial: "(1) the seriousness of the irregularity; (2) whether the statement was cumulative of evidence properly admitted; and (3) whether the irregularity could be cured by an instruction." *State v. Post*, 118 Wn.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992). Considering these factors with deference to the trial court, we hold that the trial court did not abuse its discretion in denying Perez-Valdez's motions for a new trial.

¶19 First, there was an irregularity. Patton vouched for the victims' credibility, which is serious because this case hinged on whether the jury found the two victims to be credible. *See State v. Fitzgerald*, 39 Wn. App. 652, 657, 694 P.2d 1117 (1985). Next, however, Patton's statement was essentially cumulative of the rest of her testimony. *Cf. State v. Ramos Escalona*, 49 Wn. App. 251, 255, 742 P.2d 190 (1987) (finding that a statement about a past crime of stabbing "was not cumulative or repetitive of other evidence"). She was the CPS investigator, and the outcome of her investigation was to permanently remove the children from the home. To some extent, her testimony implied that she believed the two victims, although she should not have expressly said that. Finally, the trial court immediately gave a curative instruction striking the statement. During jury instructions, the trial court reemphasized that the jury was not to consider stricken evidence. The trial court adopted the jury instructions proposed by the defense, with only slight modifications unrelated to this issue, and further offered to give the defense another instruction related to the improper and stricken testimony if the defense wanted one. No such request was made. We presume that juries follow the instructions and consider only evidence

that is properly before them. *State v. Johnson*, 60 Wn.2d 21, 29, 371 P.2d 611 (1962) (quoting *State v. Priest*, 132 Wash. 580, 584, 232 P. 353 (1925)).

¶20 We review a trial court's decision to deny a new trial for an abuse of discretion based on " 'the oft repeated observation that the trial judge,' having 'seen and heard' the proceedings, 'is in a better position to evaluate and adjudge than can we from a cold, printed record.' " *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting *State v. Wilson*, 71 Wn.2d 895, 899, 431 P.2d 221 (1967)). Here, about Patton's statement and the subsequent curative instruction, the trial court stated:

> That happened so quickly [the jury] didn't even understand what was going on. It happened quickly. She made a quick statement. I told them to disregard it. I am convinced if we ask them, remember what that was all about? I'm convinced they wouldn't even remember what I was talking about. So I'm not convinced that that's tainted this jury.

2 VRP at 324. Given this assessment, in light of the factors of analysis for a new trial and the context of Patton's statement, we hold that the trial court did not abuse its discretion in denying a new trial. Patton's statement was not so inherently prejudicial that it rendered the curative instruction ineffective and necessitated a new trial.

D. *General Moral Character Evidence*

¶21 Finally, Perez-Valdez argues that the trial court erred when it prevented the defense from referencing evidence about his good moral character in closing arguments. Although the evidence rules state that character evidence is generally not admissible for proving propensity to commit a charged crime, there is an exception allowing "[e]vidence of a *pertinent* trait of character offered by an accused, or by the prosecution to rebut the same." ER 404(a)(1) (emphasis added). " '[P]ertinent,' as used in ER 404(a)(1), is synonymous with 'relevant,' " and therefore " 'a pertinent character trait is one that tends to make the

existence of any material fact more or less probable.' " *City of Kennewick v. Day*, 142 Wn.2d 1, 6, 11 P.3d 304 (2000) (quoting *State v. Eakins*, 127 Wn.2d 490, 495-96, 902 P.2d 1236 (1995)).

¶22 Here, the defense called witnesses who testified to Perez-Valdez's reputation for good moral character. Though the State did not object at the time the testimony was offered, it later correctly argued that a general reputation for good character is not pertinent under ER 404(a)(1) to a specific element of the charged crime, rape of a child. *See State v. Griswold*, 98 Wn. App. 817, 829, 991 P.2d 657 (2000), *abrogated on other grounds by State v. DeVincentis*, 150 Wn.2d 11, 74 P.3d 119 (2003); *cf. Day*, 142 Wn.2d at 15 (holding that a "reputation for sobriety from drugs and alcohol is 'pertinent' to the charge of possession of drug paraphernalia because 'intent to use' is an element of the offense"). The trial court did not strike the good moral character evidence or otherwise tell the jury to disregard it. Rather, the trial court merely prevented the defense from presenting argument about evidence that, upon later objection, the court deemed to be inadmissible.[2]

¶23 There is nothing offensive about a trial court's precluding a party from taking further advantage of evidence that was admitted but later deemed inadmissible. *See State v. Rodriguez*, 146 Wn.2d 260, 272, 45 P.3d 541 (2002) (noting that the court could have used "an appropriate curative instruction, even after [the witness's] testimony," after the defense failed to make a timely objection that the witness was in shackles). Accordingly, we affirm the trial court's handling of this evidentiary issue, as it is not error to bar

---

[2] The Court of Appeals affirmed this trial court decision on the basis that it was made pursuant to an agreement by the defense with the State. *Perez-Valdez*, 2009 WL 3823243, at *3, 2009 Wash. App. LEXIS 2857, at *7-8 (citing *Nghia Nguyen v. Sacred Heart Med. Ctr.*, 97 Wn. App. 728, 735, 987 P.2d 634 (1999) ("An agreement arrived at on the record is binding on the parties and will not be reviewed on appeal unless the party contesting it can show that the concession was a product of fraud or that the attorney overreached his authority.")).

argument about a nonpertinent trait of the defendant, namely his general reputation for good character.

## CONCLUSION

¶24 The trial court did not abuse its discretion when making the challenged evidentiary decisions or denying a new trial. Rather, the trial court acted with careful consideration and within the bounds of its lawful discretion. The jury was convinced that Perez-Valdez was guilty of second and third degree rape of a child. Finding no abuse of discretion by the trial court, we affirm the convictions.

ALEXANDER, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

¶25 WIGGINS, J. (dissenting) — Alberto Perez-Valdez sought to introduce testimony about an arson committed by his accusers as evidence of motive to fabricate allegations against him. Because Perez-Valdez was erroneously prohibited from introducing admissible evidence to challenge the alleged victims' credibility, I dissent.

¶26 Rape of a child is a heinous offense. But it is also terrible to send Perez-Valdez to prison for life after depriving him of relevant evidence that the alleged victims had a motive to lie. The presumption of innocence and requirement of proof beyond a reasonable doubt compel us to allow defendants to present relevant evidence in their defense. This is particularly true where the case rests on the uncorroborated testimony of two alleged victims.

¶27 The alleged victims' testimony is highly questionable. S.V. testified that from ages 10 through 13, Perez-Valdez fully penetrated her with his penis over 500 times without a condom. In addition, S.V. stated that she had unprotected sex with her stepbrother, Jose, at least once a month over the same three year period. A.V. testified that

starting at age 8, Perez-Valdez had unprotected sex with her six to seven times per month for a period of six years. A.V. also had unprotected sex with Jose "pretty often." 1 Verbatim Report of Proceedings (VRP) (Oct. 23, 2007) at 112. Neither girl became pregnant despite the alleged frequency of the rapes. S.V.'s medical examination revealed that there was no evidence of scarring or disruption to her hymen. A.V. had a disruption to the back of her hymen at the 6:00 position. Expert medical testimony concluded that after the number of penetrations A.V. alleged, it was "unusual to have a single isolated disruption at 6:00." 2 VRP (Oct. 25, 2007) at 358.

¶28 A.V. had a reputation for being untruthful. With a straight face, A.V. would look school officials in the eye and tell them something that they knew was absolutely not true. S.V. testified that A.V. "didn't tell the truth a lot." 1 VRP at 62. Even A.V. stated that she "didn't have a good reputation [for being a truth-teller]." *Id.* at 90.

¶29 Both S.V. and A.V. knew that their younger sister, Ashley, was removed from the home because she alleged that Perez-Valdez had molested her.[3] After Ashley's removal, S.V. and A.V. repeatedly told authorities that Perez-Valdez had *not* sexually abused them.

¶30 Perez-Valdez's only defense at trial was that A.V. and S.V. were not telling the truth, a classic case of "he said, she said." Where a case stands or falls on the jury's belief or disbelief of essentially two witnesses, those witnesses' "credibility or *motive* must be subject to close scrutiny." *State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980) (emphasis added).

¶31 The theory of the defense was that S.V. and A.V., having seen that allegations of sexual abuse resulted in their younger sister's removal from the Perez-Valdez house,

---

[3] Testimony from Ashley's subsequent foster mom and aunt suggests that these allegations were fabricated. Ashley continued her behavior of lies, threats, and manipulations after being placed in this foster home.

fabricated these allegations so that they too would be removed. On at least one occasion, A.V. stated "that she would do whatever she needed to do to be out of the home, that she wanted to be returned to her, reunited with her birth mom." 1 VRP at 229. As further proof of this motive, Perez-Valdez sought to introduce evidence under ER 404(b) that S.V. and A.V. set fire to their subsequent foster mother's home.

¶32 Outside the presence of the jury, defense counsel offered proof of the connection between the arson and the allegations against Perez-Valdez. To assist in explaining the circumstances, defense counsel read excerpts from a previous interview he had had with A.V.:

Question: "Okay, what is it you did?"

Answer: "Arson, First Degree."

Question: "And you didn't think that was bad trouble."

Answer: "No. I don't think it is bad. Shouldn't have done it, but I don't think it is bad."

Question: "Why did you do it?"

Answer: "Because I volunteered to do it for my sister because I asked her, um, if she would clean the car for me, clean the car for me, that I would help her."

Question: "Was cleaning the car one of the chores that [subsequent foster mother] Ginger had for you?"

Answer: "Yeah, because we just got from, we went to some kind of ocean, I don't know, in Seattle or something, some ocean, and I picked up some crabs and everything and it smells like crabs, and I wanted her to clean it because it was all stuffed of everything inside of there, so yeah."

Question: "So you volunteered to set the house on fire if she would clean the car for you?"

Answer: "I just put gas. She is the one who set it on fire."

Question: "Why did you do that?"

Answer: "I just told you."

Question: "Well, okay. All right. I understand that, but you know, I guess not everybody would set fire or help

> somebody set a fire just to something [sic] just to get somebody to clean a car."

Answer: "I would. I do stupid things."

Question: "All right. But you liked being there?"

Answer: "Yeah. Um some, sometimes, and sometimes I didn't like it."

Question: "Well, did you want to leave Ginger's house?"

Answer: "Um, yeah I did."

Question: "Why did you want to leave Ginger's home?"

Answer: "Because they would make me have to go to church with her all the time. And she was too much of a Christian."

1 VRP at 109-10.

¶33 Evidence of other bad acts is "not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b). Such evidence is admissible, however, for other purposes "such as proof of motive . . . ." *Id.* ER 404(b) rulings are reviewed under an abuse of discretion standard. "[T]he discretion conferred upon the trial judge is not arbitrary" and "is to be used with great caution to avoid prejudicing defendants." *State v. Lough*, 70 Wn. App. 302, 313 n.5, 853 P.2d 920 (1993). If the "trial court applied the law incorrectly, then it abused its discretion, and its decision will be overturned." *Id.* Here, the trial judge abused his discretion when he withheld the arson evidence from the jury, concluding that it was a collateral issue and unfairly prejudicial. Finding that the arson was character evidence is an incorrect application of the law and consequently an abuse of discretion.

I. The Arson Evidence Was Relevant

¶34 ER 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "All facts tending to establish a theory of a party, or to qualify or disprove the testimony of his adversary, are

relevant." *Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 89, 549 P.2d 483 (1976). ER 402 provides, "All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state." Reading these two rules together, if evidence has any tendency to make a fact of consequence more or less probable, it is admissible absent some rule of exclusion.

¶35 Jurors in child sex abuse cases naturally wonder, "Why would the child lie?" The arson was relevant to show a motive for accusing Perez-Valdez of sexual abuse. Perez-Valdez reasoned that S.V. and A.V. would go to extreme measures to be removed from a living situation that they did not like. The alleged victims testified that they observed Ashley's removal from the home after Ashley accused Perez-Valdez of rape. There was also evidence that S.V. and A.V. set an arson fire in a subsequent foster home that resulted in their removal from that home. If they set fire to a home because they did not like going to church, they could just as easily fabricate allegations of rape to escape from onerous chores and restrictions on dating. The arson evidence was relevant to show motive, which casts doubt on S.V.'s and A.V.'s credibility as witnesses and makes their accounts less probable.

¶36 The trial judge concluded that the arson evidence was not relevant, deeming it a "collateral matter." 1 VRP at 194.

> We are not going into the burning of the house. Number one, you haven't really shown that she just hated this house. Was she unhappy? She is unhappy as half the teenaged kids in any house are. Everybody is unhappy with the parents. They don't like the rules, they don't like this or that, but we don't put in evidence of burning a house down. The link just isn't there. And it is just so prejudicial. And it's prejudicial to the fact-finding process, not just to her. You put in there that she is an arsonist. That's, it's just unfair.

*Id.* at 108. Requiring the defense to prove that the alleged victims "hated this house" imposed an unreasonably heavy burden on the defense. The arson itself was an extreme act that resulted in removal. The prior accusation of sexual abuse also resulted in removal. The arson evidence rendered the accusations against Perez-Valdez less probable and was accordingly relevant. The judge abused his discretion in finding the arson irrelevant.

¶37 The majority concludes that the defendant failed to "establish excessive hatred by the girls of their subsequent foster home . . . ." Majority at 816. The extent of the girls' discontent with the subsequent placement is a matter for argument by the parties; it is not a requisite foundation to admit the evidence.

¶38 The trial judge also excluded the evidence of arson because it was "so prejudicial." 1 VRP at 108. ER 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." In determining whether there is prejudice, the linchpin word is "unfair." "Almost all evidence is prejudicial in the sense that it is used to convince the trier of fact to reach one decision rather than another." *State v. Rice*, 48 Wn. App. 7, 13, 737 P.2d 726 (1987) (citing 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 106, at 249 (2d ed. 1982)). In order to exclude relevant evidence, it must be *unfairly* prejudicial. " '[T]he burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial.' " *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting *State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)).

¶39 ER 403 does not operate to exclude crucial evidence relative to a party's central contention. Here, the only possible "unfair" prejudice is that the arson evidence exposes that S.V. and A.V. committed a bad act in order to be removed from a subsequent foster home. This is exactly why it is so probative. This "prejudice" is not "unfair" but

squarely on point. And to the extent that the arson does have some unfairly prejudicial effect, it does not "substantially" outweigh the probative value.

¶40 In balancing evidence under ER 403, courts must be careful not to violate the right of a criminal defendant to a fair trial. A defendant has a constitutional right to defend against criminal charges. We have previously reversed the kidnap-murder conviction of a defendant when the trial judge rejected a key piece of the defendant's evidence as irrelevant. *State v. Maupin*, 128 Wn.2d 918, 913 P.2d 808 (1996). There the defendant offered the testimony of a witness who saw the victim, still alive, being carried away by a third person. The trial judge excluded the witness from testifying. We unanimously held that the trial court violated the defendant's constitutional right to call witnesses in his defense because the evidence cast "substantial doubt on the State's version of the crime." *Id.* at 930.

¶41 The Court of Appeals similarly reversed a conviction of vehicular homicide after the trial court excluded key defense evidence under ER 403. *State v. Young*, 48 Wn. App. 406, 739 P.2d 1170 (1987). Young was convicted of vehicular homicide when he lost control of his pickup truck and the truck overturned, resulting in the deaths of his two passengers, Setzer and Pelham. Young's defense was that Setzer, who was seated next to Young, reached over and grabbed the steering wheel, causing Young's loss of control. Young offered the testimony of three witnesses who had observed Setzer do the same thing on four other occasions in the prior year and a half. The trial court excluded the evidence under ER 403 and the appellate court reversed:

> Weighing the probative value of evidence under ER 403 against the dangers of confusion or prejudice, the general rule requires the balance be struck in favor of admissibility. *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980). ER 403 does not extend to the exclusion of crucial evidence relevant to the central contention of a valid defense. 5 [KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 105 (2d ed. 1982)]; *United States v. Wasman*, 641

F.2d 326 (5th Cir. 1981). Here, evidence of Mr. Setzer's conduct on the night of the accident was highly probative and crucial to Mr. Young's theory of defense, that it was Mr. Setzer and not he that caused the accident. Nor is its probative value "substantially outweighed" by the dangers enumerated in ER 403. The balance should have been struck in favor of admissibility. Under these circumstances the court's failure to do so was an abuse of discretion.

*Young*, 48 Wn. App. at 413.

¶42 This ruling here was made in the heat of trial by an experienced trial judge. But I conclude that the judge misapplied ER 403 when he struck the balance against allowing Perez-Valdez to present evidence to support his theory.

## II. Labeling the Arson as Character Evidence Was an Abuse of Discretion

¶43 "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ." ER 404(a). Labeling someone as an arsonist would indeed violate ER 404(a) because it is an argument based on character. The judge appears to have had ER 404(a) in mind when he stated, "You put in there that she is an arsonist. That's, it's just unfair." 1 VRP at 108. But the evidence was not offered to label A.V. as an arsonist; rather it was offered to prove that she was willing to resort to extreme measures to escape what she regarded as unacceptable foster home placement. The arson is evidence of motive and admissible under ER 404(b).

## III. Harmless Error

¶44 Evidentiary errors under ER 404 are judged by the harmless error test. *Young*, 48 Wn. App. at 410. " 'A harmless error is an error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final

outcome of the case.'" *In re Det. of Pouncy*, 168 Wn.2d 382, 391, 229 P.3d 678 (2010) (quoting *State v. Britton*, 27 Wn.2d 336, 341, 178 P.2d 341 (1947)). If a reasonable possibility exists that in the absence of the error the verdict might have been more favorable to the accused, it cannot be harmless.

¶45 The State's case was weak; it was based solely on the credibility of S.V. and A.V. S.V. and A.V. had been impeached throughout the trial and had been shown to have reputations for untruthfulness. There were no physical signs to corroborate their testimony about the alleged rapes. The majority asserts that "the defense was still able to argue its theory of the case, including by presenting substantial evidence about S.V.'s and A.V.'s reputations for untruthfulness." Majority at 816. But the defense was unable to present one of its strongest facts: that the girls had committed arson in a subsequent foster home in order to be moved.

¶46 The majority also highlights that Perez-Valdez was permitted to show "that the girls did something serious enough that caused the State to remove them from [the Burnette] home." *Id.* at 817. However, the subsequent foster mother minimized this evidence by testifying that " '[e]very time the State moves a child they think it's a serious reason. . . . It's always serious.'" *Id.* (quoting 1 VRP at 196-97). Thus, the subsequent removal of the girls was reduced to the lowest common denominator—even the most minor reason for removing a child was labeled as "serious." Setting the arson fire was unfairly equated with the most minor reason for moving a child.

¶47 The jury was entitled to evaluate the alleged victims' credibility with full knowledge of possible motive. I cannot conclude that the exclusion of the arson was trivial or formal. If Perez-Valdez had been able to show that S.V. and A.V. were willing to set a house on fire to be removed from a living situation that they did not like, there is every reason to believe that the outcome of the trial might have

been different. Consequently, I would hold that exclusion of the arson evidence was prejudicial to Perez-Valdez and that the error was not harmless.

¶48 I dissent.

MADSEN, C.J., and C. JOHNSON and CHAMBERS, JJ., concur with WIGGINS, J.