

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73846-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| DAMON L. MCCART, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 19, 2016 |
| | ) | |

VERELLEN, A.C.J. -- During jury selection in Damon McCart's trial for second degree burglary and third degree theft, a prospective juror said he knew McCart from his job at a youth corrections center. Based on that remark and the remarks of another prospective juror, McCart moved for a mistrial. The court denied the motion, and the jury convicted McCart as charged. He appeals, arguing that the denial of his mistrial motion denied him his right to an impartial jury. He also contends the court denied his right to a public trial by holding trial past the closing time posted on the courthouse door. We affirm.[1]

## FACTS

Based on allegations that McCart burglarized two different buildings and stole clothing, a motorcycle, and a U-Haul truck, the State charged him with two counts of

---

[1] This appeal was transferred to this court from Division III.

No. 73846-1-I/2

second degree burglary, two counts of theft of a motor vehicle, and third degree theft.

During jury selection, the court asked if any prospective jurors knew McCart. Juror 46

raised his hand. The following colloquy occurred:

| COURT: | Do you know him personally or just his name? |
|---|---|
| JUROR NO. 46: | I retired from the Department of Corrections at Ahtanum Youth -- |
| COURT: | Okay. |
| JUROR NO. 46: | Corrections. |
| COURT: | Now, you're not answering my question. |
| JUROR NO. 46: | I know him from there. |
| COURT: | Okay. You know him from employment. Okay.[2] |

The court then excused Juror 46.

Later, Juror 19 indicated she worked in law enforcement. The court asked if she

knew the defendant, and the following colloquy ensued:

| COURT: | But you don't know the attorneys or defendant; is that correct? |
|---|---|
| JUROR NO. 19: | I'm not sure. He looks familiar, but I'm not sure. |
| COURT: | Okay. Okay. And is that the reason that you're not sure if you could be fair or not, or is there another reason? |
| JUROR NO. 19: | I'm an inmate supervisor. |
| COURT: | Okay. There may be some follow-up down the road on that.[3] |

---

[2] Report of Proceedings (RP) (Feb. 25, 2013) at 96-97.

[3] Id. at 102-03.

Defense counsel subsequently moved for a mistrial, arguing that the remarks of Jurors 46 and 19 "together reinforces the idea that he is a criminal, that they know him from prior incarcerations. And therefore the implication is that he's a criminal then, he must be a criminal now, and cannot have a fair trial with this particular jury pool."[4] The prosecutor pointed out that neither juror stated that McCart was a former inmate and that the jury would not necessarily have drawn that conclusion from their remarks. The court initially ruled as follows:

COURT: I'm not concerned with Number 19's statements. She -- looking at her body language, looking at her facial expressions, she seemed to be very unsure whether she knew the [d]efendant or not. And so I don't think that the jury would extrapolate much from that other than she was just being cautious. Now, it may be that we -- we want to discuss having her off the jury pool -- that's the next thing I'll get to -- without having [defense counsel] use one of his peremptory challenges. But I don't think that her statements were so emphatic that any of the other potential jurors are going to really believe that she did know the [d]efendant. Just maybe; she wasn't sure.

DEFENSE: Unless she's back there talking to him right now about it.

COURT: Okay.

DEFENSE: She wasn't retained in the courtroom.

. . . .

COURT: Yeah. We want to make sure she's not discussing this issue with the other jurors. As far as Number 46, that's close, but I think he was cut off in time. And I -- I don't think that it's enough to prejudice the entire jury. The jury's going to get instructed that they're to consider only the evidence in the case and that they're to follow the jury instructions. There's a very strong presumption that the jurors are going to follow the law as given to them and they're going to convict or not

_____

[4] Id. at 143.

convict based upon the evidence and the instructions to the jury. And so I think that that one statement, although unfortunate, I don't think that's enough to grant a mistrial. *And so I'm going to deny the motion for mistrial.* But I do want to get Juror Number 19 in here before any further break.[5]

At that point, the bailiff informed the court that prospective Juror 38 had mentioned concerns about the statements of Juror 46. The court decided to talk to Jurors 19 and 38.

The court first brought in Juror 19 and asked, "[D]id you make any similar statements during this short break to any of the prospective jurors that you might know the [d]efendant or was that a statement that you made only to us during these questions[?]"[6] Juror 19 said she had not spoken to the prospective jurors. The court then excused her from service.

The court then brought in Juror 38 and asked whether she had concerns about the statements of Juror 46:

| COURT: | We heard through the bailiff that you think you might know the [d]efendant. You're not sure, but you might know the [d]efendant. Is that correct? |
|---|---|
| JUROR NO. 38: | Well, my concern was that what the gentleman said, that when he asked to be excused because he had retired from the Ahtanum correctional facility[,] . . . . I just immediately made the assumption that the [d]efendant had previously been serving time there . . . . for possible prior criminal activity. So it just immediately put a shadow of doubt on whether he is presumed innocent or not. |
| COURT: | Okay. So -- |

---

[5] Id. at 145-46 (emphasis added).

[6] Id. at 149.

No. 73846-1-I/5

JUROR NO. 38:    And just like, uh, now I got some prejudice in my brain
                 that wasn't there.

COURT:           Okay.

                 . . . .

COURT:           Did you have an opportunity to -- I don't know if
                 you've talked to any of the other jurors about --

JUROR NO. 38:    No.

COURT:           -- this.

JUROR NO. 38:    No.[7]

The court excused Juror 38 and then proposed a method for determining whether any

other prospective jurors had been tainted:

COURT:    Well, this concerns me. . . . Clearly one person felt strongly
          enough that it was important that she brought it to the bailiff's
          attention. And I can't ask the jurors, potential jurors, if that
          statement from Number 46 has affected their bias or lack of
          bias in this case because that would just highlight that issue,
          and I certainly don't want to dong the bell twice. . . .

          Perhaps what I will do is, before you give your questions, I
          will ask the jurors as a whole if there's anyone here who
          believes they cannot be fair in this case? And if so, please
          raise their hands. . . . That's about the gentlest way I think
          we can [find out] if anyone else feels that same way. I will
          just ask very generally if there's anyone who feels they can't
          be fair in this case for reasons we either have discussed or
          haven't discussed. And if people raise their hands, we'll just
          exclude them on that basis, sort of presuming that it has to
          do with what Number 46 said.

          [Defense counsel,] what comment, if any, do you have with
          that? I know it's not perfect, but do you see any way of
          doing that other than declaring a mistrial?

---

[7] Id. at 151-52.

5

DEFENSE: Other than declaring a mistrial, we should still [keep] our motion on the table, Your Honor. The -- I think it needs to go a little bit further. You might ask the jurors if after reflection on some of the things they've already heard, if anybody in the jury pool feels that they cannot be fair or if they've already made certain assumptions with regard to this case.

COURT: Okay. Mr. [Prosecutor]?

[PROSECUTOR]: Fair enough.[8]

The court then read a question, approved by counsel, to the prospective jurors:

COURT: As I previously instructed you, the way these trials work is . . . that every defendant, including Mr. McCart, they are presumed innocent. In light of what you've heard today about the case, is there anyone who cannot give Mr. McCart that presumption of innocence? And if so, please raise your hand. Okay. For the record nobody raised their hand to that question.[9]

The jury convicted McCart of third degree theft and one count of second degree burglary and acquitted him on the other counts. He appeals.

## DECISION

McCart first contends the court abused its discretion in denying his motion for a mistrial. He contends the remarks of Jurors 19 and 46 tainted the jury pool and require reversal. We disagree.

A mistrial is proper only if "the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be fairly tried."[10] We review a denial of a mistrial motion for abuse of discretion, finding such abuse only if "'no

---

[8] Id. at 152-54.

[9] Id. at 156.

[10] State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996).

reasonable judge would have reached the same conclusion.'"[11] We will overturn the denial of a mistrial motion only "'when there is a substantial likelihood the prejudice affected the jury's verdict.'"[12] We conclude there was no abuse of discretion and no substantial likelihood the juror comments in this case affected the jury's verdict.

Juror 19 said McCart looked familiar, but she was unsure if she had seen him before. The trial court correctly concluded that her vague, uncertain remarks had no effect on the jury. Juror 46 said he knew McCart from his employment at a youth corrections center, but he did not say whether McCart was an inmate, an employee, or something else. Although Juror 38 assumed from Juror 46's statements that McCart had been an inmate, he did not share that assumption with the other prospective jurors, and was immediately excused from service. Significantly, when the court later asked for a show of hands if, "in light of what you've heard today about the case," any juror could not give McCart the presumption of innocence, no juror raised their hand.[13] In addition, as the trial court noted, the jury was instructed to base their decision solely on the evidence admitted at trial and not on prejudice. We presume the jury follows such instructions, and nothing suggests the jury did otherwise.[14] In these circumstances, there was no abuse of discretion and no substantial likelihood the prospective jurors' remarks affected the verdict.

---

[11] State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012) (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

[12] State v. Greiff, 141 Wn.2d 910, 921, 10 P.3d 390 (2000) (internal quotation marks omitted) (quoting State v. Russell, 125 Wn.2d 24, 85, 882 P.2d 747 (1994)).

[13] RP (Feb. 25, 2013) at 156.

[14] State v. Perez-Valdez, 172 Wn.2d 808, 818-19, 265 P.3d 853 (2011).

McCart's reliance on <u>Mach v. Stewart</u> does not alter our conclusion.[15] In that case, the government charged Mach with having sexual contact with a minor. During jury selection, a prospective juror said she had a psychology background, currently worked for child protective services, and had confirmed child sexual assault in every case where a client reported it.[16] The juror also repeatedly stated that she never, in her three years as a social worker, found a case where a child lied about sexual assault.[17] Mach moved for a mistrial, which the district court denied without inquiring into whether the statements affected the panel's impartiality.[18]

The Ninth Circuit reversed, holding that the juror's statements presumptively infected the jury with bias or prejudice.[19] The court noted that the statements were "highly inflammatory and directly connected to . . . guilt."[20] The court also found the statements had an "expert-like" quality given the juror's years of experience and degree of certainty.[21] The court concluded the juror's repetition of the statements created an especially high risk they would affect the jury's verdict.[22] On these facts, and without any information regarding the statements' actual impact, the court "presume[d] that at

---

[15] 137 F.3d 630 (9th Cir. 1998).

[16] <u>Id.</u> at 631-32.

[17] <u>Id.</u> at 632.

[18] <u>Id.</u> at 632-33.

[19] <u>Id.</u> at 633.

[20] <u>Id.</u> at 634.

[21] <u>Id.</u> at 633.

[22] <u>Id.</u>

least one juror was tainted and entered into jury deliberations with the conviction that children simply never lie about being sexually abused."[23]

Mach is distinguishable because it involved repeated, expert-like statements on guilt, and the district court lacked any information regarding the statements' actual impact. By contrast, the statements in this case were only tangentially related to McCart's guilt. And unlike the record in Mach, the record in this case contains the assurance of the entire venire that despite the challenged remarks, they would presume McCart innocent. Thus, the analysis and presumption in Mach are inapplicable here.

McCart next contends the trial court denied his constitutional right to public trial "by allowing the trial to continue past 4 p.m. on two days . . . when a sign on the courthouse door indicated the courthouse closed at 4 p.m."[24] But the State points out, and McCart does not dispute, that the State Supreme Court recently rejected an identical argument on identical facts.[25]

McCart also submitted a statement of additional grounds for relief claiming there are "major issues in the chain of custody" of several pieces of evidence and a problem with the admission of his identification card. Because these claims do not adequately

---

[23] Id.

[24] Appellant's Br. at 15.

[25] State v. Andy, 182 Wn.2d 294, 301-02, 340 P.3d 840 (2014) (on appeal from a trial held in the same courthouse as McCart's, the Andy court held that the record, which has been made a part of the record in the instant case, supported the trial court's finding that the sign presented no obstacle to members of the public who wished to attend a trial, that there was no closure, and that Andy's arguments, to the contrary, "ignore[d] the evidence presented during the hearing on how the public actually reacted to the sign").

"inform the court of the nature and occurrence of alleged errors," we do not consider them.[26]

Affirmed.

WE CONCUR:

---

[26] RAP 10.10(c).