# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54101-7-II |
| Respondent, | |
| v. | |
| MARK STEVEN JOHNSON, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Mark Steven Johnson appeals his convictions for possession of methamphetamine, second degree assault—domestic violence, two counts of tampering with a witness—domestic violence, and 13 counts of violation of a court order—domestic violence. Johnson argues he was denied his right to a fair trial when the trial court denied his motion for a mistrial. He also argues the trial court erred in imposing a jury demand fee as a legal financial obligation (LFO). While this appeal was pending, Johnson filed a supplemental brief asking this court to remand to the trial court to vacate his possession of methamphetamine conviction in light of our Supreme Court's recent decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). The State concedes that the conviction must be vacated. We accept the State's concession regarding Johnson's possession conviction and remand to the trial court to vacate that conviction. We affirm Johnson's remaining convictions, but permit the trial court on remand for resentencing to reconsider whether to impose the jury demand fee.

## FACTS

Johnson and his wife were involved in an altercation that led to Johnson's arrest. Officers found methamphetamine inside the Johnsons' home that belonged to Johnson. Johnson continued to contact his wife in violation of multiple no contact orders. Ultimately, the State charged Johnson with possession of methamphetamine, second degree assault—domestic violence, two counts of tampering with a witness—domestic violence, and 13 counts of violation of a court order—domestic violence. The matter proceeded to a jury trial.

During voir dire, defense counsel asked the jury panel:

So, . . . you've been asked by the judge, you've been asked by [the prosecutor]. Now it's my turn: who thinks that's too hard of a burden to handle? Who feels like they want to give him a fair trial but, you know what, in all honesty I just might not be the right person to do it.

1 Report of Proceedings (RP) at 136. Potential juror 22 responded:

Well, I feel like—excuse me—I'd give him a very fair trial, but to be honest, after all the years I've worked as an officer, and I know how hard and honest these officers work on their case reports and they don't go forward with them unless they feel they have a case that they felt—they feel they can prove, and when then it goes beyond that to the Prosecutor, who is the checks and balances, and he looks at it and—he or she—and if he does not concur with that, it doesn't go any further. So, as a former officer and a citizen, there's doubt in my mind. I can't not tell you that.

l RP at 136-37. Defense counsel inquired if other panel members had that "kind of . . . same thing?" l RP at 137. Potential juror 62 stated, "Same thing. I'm current, and so that's—I know—I know all of it has to happen." l RP at 137. Potential juror 13 also stated that 18 years ago she was a King County Sheriff's deputy and that she knows

"the extent that goes in to (sic) doing the reports on something, and the checks and balances. So, I see what he's saying, but I—I don't think that would taint my opinion, just because I know you have to look at all of the evidence and you have to look at all that stuff and see if it fits. . . . I don't think that that would taint my judgment."

l RP at 137.

At the end of voir dire, Johnson requested a mistrial, claiming that the entire panel had been tainted by potential juror 22's statement that he was previously in law enforcement and that a case does not go any further unless the prosecutor thinks there's merit to the charge. The State responded that potential juror 22 "did not profess any expertise in domestic violence/assault cases" rather, he was discussing "police work in general." 1 RP at 155. The trial court agreed and denied the motion for a mistrial but allowed additional voir dire on the issue.

Both potential jurors 22 and 62 were removed for cause. The trial court then asked the remaining panel members if statements about law enforcement and "what goes on to get to this point in a criminal case" affected his or her ability to be fair and impartial. l RP at 173. None of the panel members indicated that their ability to be impartial had been tainted by prior statements.

The court allowed both parties to ask further questions. Defense counsel asked the panel if its ability to be impartial was diminished in light of prior statements. The following dialogue took place with potential juror 26:

> [DEFENSE COUNSEL]: And I'm curious about—I'll starting with No. 26, I've been picking on you a little bit. Did hearing from those other jurors, law enforcement folks, I mean one with a lot of experience—
>
> JUROR [26]: Right.
>
> [DEFENSE COUSNEL]: —kind of, you know, their feeling—
>
> JUROR [26]: It's a little bit of extra information to know some people in law enforcement. I think I could try to be impartial, but I am—I am presuming innocence, but I'm probably not as straight down the middle as I should be.
>
> [DEFENSE COUNSEL]: More inclined to the prosecution?
>
> JUROR [26]: Yeah.

1 RP at 173-74. With potential juror 46, the following inquiry took place:

3

[DEFENSE COUNSEL]: Okay. And is anybody else, based on this long conversation, day-long conversation now we've had today, that recently was broken up after law enforcement kind of weighed in—people with law enforcement . . . experience, is anybody else kind of now, where before, were kind of like, oh, that's kind of an iffy bet, I'm going to try. Is anybody else moved by those statements to more inclined to prosecute? More inclined to believe somebody probably did something? 46?

JUROR [46]: I was aware of that process—

[DEFENSE COUNSEL]: Okay.

JUROR [46]:—I'm pro law enforcement, but I also have a lot of personal friends that are officers and some of them are—

[DEFENSE COUNSEL]: Okay.

JUROR [46]: . . . [S]o I think I can be impartial. But I am pro law enforcement.

1 RP at 174-75. Defense counsel then followed up with potential jurors 10, 11, and 12 by asking:

[DEFENSE COUNSEL]: Okay. And in no[] way—I hope I'm not coming across as anti-law enforcement, and I greatly support our—I know them well, we work with them well, [the prosecutor] works with them very closely, as well. Just simply hearing from them and them kind of weighing in on the process, I mean, that's what was spoken about. That's—that's the key issue that's kind of led to another pause for us to have to come back. Hearing about the process, was that something too far for anybody else?
Then—is it Juror No. 10, was that one step too far for you? Or are you right where you were before those statements?

JUROR [10]: I'm not [indiscernible].

[DEFENSE COUNSEL]: Fine? Okay. And 11?

JUROR [11]: Yes.

[DEFENSE COUNSEL]: Same for you? 12?

JUROR [12]: (No audible response.)

4

1 RP at 175.

Johnson did not renew his motion for a mistrial. The trial court allowed both parties to use their peremptory challenges.[1] After the jury was selected, the court inquired if this was the jury Johnson selected and he answered "Yes, Your Honor." 1 RP at 177.

The jury found Johnson guilty as charged. Based on an offender score of 16, the court sentenced Johnson to 84 months of total confinement. The court also imposed 18 months of community custody for the assault conviction and 12 months of community custody for the possession conviction.

During the sentencing hearing, the trial court stated it was "strik[ing] the filing fee" and "the drug enforcement fund" but did not address why. 2 RP at 592. The court did not check the box on the judgment and sentence stating that it found Johnson indigent. On the judgment and sentence, the trial court crossed off the criminal filing fee and the drug enforcement fund fee but did not cross off the $250 jury demand fee. The trial court subsequently entered an order, finding Johnson indigent for appeal purposes. Johnson appeals.

ANALYSIS

I.     POSSESSION CONVICTION

Johnson contends that we should vacate his possession of methamphetamine conviction in light of *Blake*. The State concedes the convictions should be vacated but argues we should not remand for resentencing given Johnson's high offender score.

In *Blake*, our Supreme Court determined RCW 69.50.4013, Washington's strict liability drug possession statute, is void for violating the due process clauses of the state and federal constitutions because it criminalized unintentional, unknowing possession of controlled

---

[1] This portion of the report of proceedings is not included in our record.

substances. 197 Wn.2d at 193-94. In light of *Blake*, we accept the State's concession and vacate Johnson's possession of methamphetamine conviction, but because the conviction affected both Johnson's offender score (which we recognize is above 9) and community custody, we remand for the trial court to consider what effect, if any, the Supreme Court's decision in *Blake* has on Johnson's sentence.

II.     MISTRIAL MOTION

Johnson contends he was denied his right to a fair trial because the trial court denied his motion for a mistrial. He argues that the trial court erred by denying his motion for a mistrial because the jury was tainted by exposure to prejudicial information during voir dire. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to a fair trial by an impartial jury. *State v. Gaines*, 194 Wn. App. 892, 896, 380 P.3d 540 (2016). A trial court should grant a mistrial when an irregularity in the trial proceedings is so prejudicial that it deprives the defendant of a fair trial. *State v. Babcock*, 145 Wn. App. 157, 163, 185 P.3d 1213 (2008). More than "a possibility of prejudice" must be shown. *State v. Lemieux*, 75 Wn.2d 89, 91, 448 P.2d 943 (1968).

Courts look to three factors to determine whether a trial irregularity warrants a new trial: "'(1) the seriousness of the irregularity; (2) whether the statement was cumulative of evidence properly admitted; and (3) whether the irregularity could be cured by an instruction.'" *State v. Perez-Valdez*, 172 Wn.2d 808, 818, 265 P.3d 853 (2011) (quoting *State v Post*, 118 Wn.2d 596, 620, 826 P.2d 172 (1992)).

Because the trial judge is in the best position to determine prejudice, we review the decision to grant or deny a mistrial for abuse of discretion. *Babcock*, 145 Wn. App. at 163. The standard is extremely deferential. We will reverse the denial of a mistrial only if a trial irregularity was so

significant that no reasonable judge would have denied the motion. *State v. Rodriguez*, 146 Wn.2d 260, 269, 45 P.3d 541 (2002).

Here, potential jurors 22 and 62 indicated that they had law enforcement experience and were aware of the process for charging an individual with a crime. Both potential jurors were removed. At the end of his voir dire, Johnson requested a mistrial, claiming that the entire panel had been tainted by potential juror 22's statement that he was previously in law enforcement and that a case does not go any further unless the prosecutor thinks there is merit to the charge. The trial court denied the mistrial but permitted additional questioning of the jury panel to determine if it could be impartial. The court then asked the remaining panel members if statements about law enforcement and "what goes on to get to this point in a criminal case" affected his or her ability to be fair and impartial. 1 RP at 173. None of the panel members indicated that their ability to be impartial had been tainted by prior statements.

The court allowed both parties to ask further questions. Defense counsel asked the panel members individually if their ability to be impartial was diminished in light of prior statements. After additional voir dire, there was no renewal of the motion for a mistrial. The court allowed Johnson to use his peremptory challenges and then inquired if the jury was the one he had selected. Johnson replied "Yes, Your Honor." 1 RP at 177.

Based on these facts, the offending statements were insignificant as they had no impact on the potential jurors. Further, the trial court's response to Johnson's concerns was adequate as evidenced by Johnson's decision not to renew his motion for a mistrial and his affirmative response when he selected the jury. The statements were not cumulative, nor was there need for a curative instruction in light of the insignificance of the statements. Johnson fails to show a trial irregularity sufficient to warrant a new trial under *Perez-Valdez*, 172 Wn.2d at 818. Accordingly, the court

did not abuse its discretion by denying his request for a mistrial. Similarly, Johnson fails to show he was denied his right to a fair trial.

III.     LFO

Johnson argues that the trial court's imposition of the jury demand fee was improper because he is indigent, and he asks us to remand with instructions to the trial court to strike this fee. The State concedes there was no inquiry into Johnson's ability to pay.[2]

RCW 10.46.190 prohibits the imposition of a jury demand fee if the person is indigent as defined in RCW 10.101.010(3)(a)-(c). A trial court must conduct an individualized inquiry on the record concerning a defendant's current and future ability to pay discretionary LFOs. *State v. Ramirez*, 191 Wn.2d 732, 742, 426 P.3d 714 (2018).

Our record does not contain any information as to whether Johnson meets the criteria for indigency under RCW 10.101.010(3)(a)-(c). And the trial court did not indicate on the judgment and sentence that it found Johnson to be indigent.

Because there was no inquiry into Johnson's financial circumstances, we accept the State's concession. The jury demand fee, allowed by RCW 10.46.190, can be revisited upon resentencing, consistent with RCW 10.01.160 and *Ramirez*.

CONCLUSION

We accept the State's concession regarding Johnson's possession conviction and remand to the trial court to vacate that conviction. We affirm Johnson's remaining convictions, but permit the trial court on remand for resentencing to reconsider whether to impose the jury demand fee.

---

[2] The State also "agrees that the trial court's imposition of the $200 criminal filing fee and $100 domestic violence assessment should be vacated." Br. of Respondent at 12. But the trial court crossed off the criminal filing fee and Johnson does not contest the domestic violence assessment. For these reasons, we do not accept this portion of the State's concession.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Sutton, J.

_____
Glasgow, A.C.J.