[No. 23491-6-III.   Division Three.   June 19, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD RAY BABCOCK, *Appellant*.

*Dennis W. Morgan*, for appellant.

*Timothy S. O'Neill, Prosecuting Attorney*; and *David B. Trefry*, for respondent.

¶1 STEPHENS, J.[*] — Donald Ray Babcock was charged with first degree child rape, harassment and kidnapping of MB, and first degree child molestation of AT. Over Mr. Babcock's objection, the trial court determined that both MB and AT were competent to testify, and that hearsay testimony regarding AT's allegations was admissible. The kidnapping charge was dismissed before trial. The child molestation charge was dismissed midtrial after AT refused to testify. Although substantial hearsay testimony had been admitted relating to the charge involving AT, the trial court denied Mr. Babcock's motion for a mistrial, instructing the jury to disregard the testimony concerning AT's allegations. The jury convicted Mr. Babcock of first degree child rape but

---

[*] Justice Debra L. Stephens was a member of the Court of Appeals at the time oral argument was heard on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

could not reach a verdict on the harassment charge, which the trial court then dismissed without prejudice. Mr. Babcock appeals. We reverse and remand for further proceedings, holding that the trial court abused its discretion by refusing to grant a mistrial.

## FACTS

¶2 Donald Babcock is the uncle of MB and AT, ages 8 and 5 respectively. In late August of 2003, MB informed her 12-year-old aunt, Chelsey Cunningham, that "Donnie" was touching her in her "private areas." Report of Proceedings (RP) (July 22, 2004) at 172. MB indicated that she had told her mother, Kim Babcock, about it. Chelsey did not tell anyone about the disclosure.

¶3 In October of 2003, AT spontaneously informed her grandmother, Janet Cunningham, and her husband, Dale, that "[m]y Uncle Donnie's been touching me." RP (July 22, 2004) at 149. Ms. Cunningham informed Ms. Babcock of AT's statements. Ms. Cunningham did not report the incident to the police because Ms. Babcock was in the midst of a custody hearing and she wanted her to wait until that was completed. Ms. Babcock assured her mother that she would take care of it.

¶4 On January 21, 2004, MB visited the school nurse, Sommer Enyeart, because she had urinated in her pants. Because this had happened on previous occasions, the nurse asked if she had been taking any bubble baths or if she had been touched inappropriately. MB reported that she had been touched inappropriately by a babysitter and also by her uncle. She further told Nurse Enyeart that the babysitter was in jail and that she had told her mother about her uncle, but that nothing had happened. Nurse Enyeart then reported the incident to Child Protective Services (CPS).

¶5 Sergeant Reggie Bartkowski of the Goldendale Police Department investigated the referral. He interviewed MB at her school. After he determined that she knew the

difference between a truth and a lie, as well as the consequences for telling a lie, he began to question her with regard to the incident.

¶6 MB told him that her Uncle Donnie had touched her in her private areas when she was living in the green house in Goldendale.[1] She indicated that she had been asleep in her bedroom downstairs and that, in the middle of the night, her Uncle Donnie and her Aunt Lacey came down to her bedroom and carried her upstairs. She indicated that her Aunt Lacey put her hand over her mouth so she could not scream and that her aunt was playing with her "boobs." RP (July 22, 2004) at 15. Both her aunt and uncle were undressed at the time. She also indicated that her aunt and uncle undressed her and that she was tied down with ropes. Then her Uncle Donnie took his finger and placed it in her crotch. She indicated that it felt weird and it hurt. They then gave her a pill which made her sleepy. They warned her that if she told anybody they would kill her. They then took her downstairs and put her back to bed. While they were putting her to bed, she heard them say they were going for AT.

¶7 Sergeant Bartkowski also questioned AT. As with MB, he determined that she knew the difference between a truth and a lie, as well as the consequences for telling a lie, before he began to question her with regard to the incident.

¶8 AT stated that she was there because her Uncle Donnie touched her in "wrong places" and pointed to her crotch. RP (July 22, 2004) at 23. She told him it occurred during the nighttime in the green house and that she had gone upstairs and sat on her uncle's lap. She indicated that her underwear was down about four inches and that her uncle touched her. After that it was difficult to obtain any more details from AT.

¶9 An information was filed on February 2, 2004, charging Mr. Babcock with one count of first-degree child rape

---

[1] In August of 2003, MB, AT, and their mother, Ms. Babcock, moved to Yakima, Washington from their home in Goldendale, Washington. They moved in with Ms. Babcock's mother, Ms. Cunningham.

(MB), one count of first degree child molestation (AT), one count of kidnapping (MB),[2] and one count of harassment (MB).

¶10 The trial court held a competency hearing on May 27, 2004. Both MB and AT testified. AT was able to answer questions designed to test her ability to discern the truth from a lie and her knowledge of the consequences for lying. When asked why she was in court, AT stated "[b]ecause my Uncle Donnie done bad things" at her house in Goldendale. RP (May 27, 2004) at 13. She was able to relate that her mother was home and that the incident happened upstairs inside the house during the day. She was also able to relate that her Uncle Donnie and Aunt Lacey lived upstairs and that she lived downstairs with her mother. However, when pressed about the incident, she refused to speak, indicating that she did not like talking about it and that she was not supposed to talk about it.

¶11 The court made the following ruling as to the competency of AT:

> In [AT's] case, she's a five-year-old child. She appears to be of average intelligence. She knows the difference between a lie and a truth. She knows things like above, below, inside, outside, hard, soft, things of that nature. She also is able to express herself, and although she's a typical five-year-old and she's kind of squirrelly at times, she's certainly able to perceive events and relate events, although she might do so reluctantly, but that's something that could be determined at the time of trial. But as far as her competency is concerned, I do find that [AT] is competent to testify.

RP (July 6, 2004) at 19. The court then applied the *Ryan*[3] factors and determined that AT's hearsay statements to various witnesses were reliable and admissible.

¶12 At trial, the State introduced the hearsay statements of AT through Sergeant Bartkowski; Gail Froehlich,

---

[2] The kidnapping charge was dismissed prior to trial.

[3] *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

a CPS caseworker with the Department of Social and Health Services; Ms. Babcock; and Janet and Dale Cunningham. But, when AT was called to the stand, she refused to answer any questions. AT further refused to testify by closed-circuit television. Because there was no corroboration of AT's previous statements, the trial court ruled them inadmissible and dismissed the charges as they related to AT. The trial court refused to grant a mistrial, and instead issued a cautionary instruction to the jury instructing the jury to disregard the testimony concerning AT.

¶13 MB testified at trial. She stated that Mr. Babcock touched her "privates." She indicated that this occurred in an upstairs bedroom after she had been tied up with a rope. While tied up, she was given apple juice and a black and white sleeping pill. After she fell asleep, she felt something touching her privates at the front and inside. She did not know who or what was touching her because she was asleep. She later testified that her Uncle Donnie stuck his finger inside her. After she awoke, they took her downstairs.

¶14 On cross-examination, MB gave conflicting testimony as to when the incident occurred. She testified at trial that the incident occurred after school had started and prior to Thanksgiving. However, she later admitted that she had testified at the competency hearing that it occurred between Thanksgiving and Christmas. MB was not living in Goldendale during those times. Steve Tepley, a private investigator, testified that MB told him that the touching occurred after she got out of school but before July 4, 2003.

¶15 MB also gave conflicting evidence with regard to whether Mr. Babcock and Ms. White were dressed during the incidents. She indicated to Sergeant Bartkowski that both Ms. White and Mr. Babcock were undressed during the incident. However, on another occasion, she indicated that Ms. White was wearing a dress and Mr. Babcock was wearing a cowboy suit.

¶16 The jury found Mr. Babcock guilty of first-degree child rape. The jury could not return a verdict on the

harassment count, and the trial court declared a mistrial on that count. The harassment count was ultimately dismissed without prejudice.

¶17 Mr. Babcock filed a motion for new trial on the basis that the trial court erred in denying his motion for a mistrial following the dismissal of the charge concerning AT and because of juror misconduct.[4] The motion was denied. This appeal followed.

## ANALYSIS

¶18 Mr. Babcock argues that the trial court abused its discretion when it denied his motion for a mistrial. A trial court should grant a mistrial when an irregularity in the trial proceedings is so prejudicial that it deprives the defendant of a fair trial. *See State v. Post*, 59 Wn. App. 389, 395, 797 P.2d 1160 (1990), *aff'd*, 118 Wn.2d 596, 826 P.2d 172, 837 P.2d 599 (1992); *State v. Johnson*, 60 Wn.2d 21, 371 P.2d 611 (1962). In determining whether a trial irregularity deprived a defendant of a fair trial, this court examines several factors: (1) the seriousness of the irregularity; (2) whether challenged evidence was cumulative of other evidence properly admitted; and (3) whether the irregularity could be cured by an instruction to disregard the remark, an instruction which a jury is presumed to follow. *State v. Escalona*, 49 Wn. App. 251, 254, 742 P.2d 190 (1987) (citing *State v. Weber*, 99 Wn.2d 158, 165-66, 659 P.2d 1102 (1983)). Because the trial judge is in the best position to determine the prejudice of circumstances at trial, an appellate court reviews the decision to grant or deny a mistrial for abuse of discretion. *Weber*, 99 Wn.2d at 166.

¶19 *Seriousness of the Irregularity.* The principal irregularity at Mr. Babcock's trial involved the admission of hearsay testimony concerning the charge as to AT, which was dismissed. The effect of this testimony on the jury may

---

[4] Mr. Babcock filed a written motion to sever offenses; however, there is no evidence in the record that the trial court ever ruled on the motion or that Mr. Babcock pursued the severance issue any further.

be analogized to the effect of the admission of evidence of other bad acts. *See* ER 404(b). Thus, we view it as "extremely serious." *Escalona*, 49 Wn. App. at 255 (holding trial court should have granted mistrial where witness stated that defendant charged with assault had previously stabbed someone). Here, there was no physical evidence or eyewitness testimony corroborating the allegations concerning either AT or MB. The verdict depended solely on the jury's credibility determinations about MB's testimony. And, that testimony was at times inconsistent. Consequently, testimony at trial that AT had also been abused, and under circumstances somewhat similar to those involving MB, had a high potential for prejudice, and represents a serious irregularity. *Id.* (noting evidence rules prohibit admission of prior bad acts except in very limited circumstances).

¶20 *Cumulative Evidence.* The evidence that Mr. Babcock molested AT was not cumulative of evidence concerning the rape and harassment of MB. The charges involved entirely separate incidents. Because the evidence was not cumulative of other evidence properly admitted, this factor weighs in favor of a mistrial. *Id.*

¶21 *Effectiveness of Curative Instruction.* Finally, this court must consider whether the irregularity of admitting the testimony concerning AT could have been cured by the instruction to the jury to disregard the remark. Here, the trial court properly instructed the jury to disregard the hearsay testimony. While it is presumed that juries follow court instructions to disregard testimony, *see Weber*, 99 Wn.2d at 166, no instruction can " 'remove the prejudicial impression created [by evidence that] is inherently prejudicial and of such a nature as to likely impress itself upon the minds of the jurors.' " *Escalona*, 49 Wn. App. at 255 (alteration in original) (quoting *State v. Miles*, 73 Wn.2d 67, 71, 436 P.2d 198 (1968)); *see also State v. Suleski*, 67 Wn.2d 45, 51, 406 P.2d 613 (1965). As the courts observed in *Escalona* and *Miles*, the admission of evidence concerning a crime similar to the charged offenses is inherently difficult

to disregard. *Escalona*, 49 Wn. App. at 255-56; *Miles*, 73 Wn.2d at 71 (involving stricken testimony that defendant had committed robbery similar to that charged).

¶22 The irregularity in this case is most analogous to that which occurred in *Suleski*, where the defendant was charged with unlawful possession of burglary tools and with attempt to obtain a narcotic drug by fraud, deceit, misrepresentation, or subterfuge, and/or alteration of a prescription. 67 Wn.2d at 47. Upon stipulation of counsel, both charges were consolidated for trial and any motions to suppress would be decided on the basis of the evidence presented at trial.

¶23 At the conclusion of the State's case, the trial court suppressed the evidence relating to the unlawful possession of burglary tools charge on the basis that it was obtained through an unlawful search and seizure. The trial court then dismissed the charge of unlawful possession of burglary tools, denied the defendant's motion for mistrial, and thereafter instructed the jury to disregard the burglary tools charge and all stricken exhibits, testimony, or inferences from such charge. *Id.* at 49.

¶24 On appeal, the Washington Supreme Court reversed and remanded, holding that Mr. Suleski's right to a fair trial was irretrievably prejudiced by the admission of the burglary tools evidence. *Id.* at 51-52. The court observed that the inherently prejudicial impact of such evidence is not easily overcome. *Id.* at 51.

¶25 Similarly, in this case, the two charges were consolidated for trial and the child hearsay statements were initially admissible to prove the charges relating to AT. Only when AT became unavailable at trial did the statements prove inadmissible. However, the fact remains that the evidence of sexual abuse as to AT was, by its very nature and similarity to the remaining charges, highly prejudicial. There is no guarantee that the jury could effectively disregard that evidence. *Suleski*, 67 Wn.2d at 51 ("We are not assured that the evidentiary harpoon here inserted could

effectively be withdrawn. It was equipped with too many barbs.").

## CONCLUSION

¶26 We hold that the trial court abused its discretion by refusing to grant a mistrial after dismissing the charges involving AT. As a result, we reverse and remand for further proceedings consistent with this opinion.[5]

SCHULTHEIS, C.J., and SWEENEY, J., concur.

---

[5] While Mr. Babcock alleges additional trial errors concerning the admission of evidence, juror misconduct, and the sufficiency of the evidence, we need not address these as they focus on fact-specific issues that may not be involved in any new trial. We leave the proper conduct of the new trial to the sound discretion of the trial judge.