IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 81347-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| VINCENT EDWARD LANDES, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Police found Vincent Edward Landes hiding in a closet in his aunt's house despite a court order prohibiting him from contacting her. A jury convicted Landes of domestic violence (DV) felony violation of a court order (FVCO). Landes appeals his conviction. He argues the trial court violated his right to confront witnesses by admitting a 911 call recording without the caller testifying and erroneously denied his motion for mistrial. He also argues cumulative error deprived him of a fair trial and the court imposed a sentence exceeding the statutory maximum. We accept the State's concession that the trial court erred by admitting the 911 call but conclude that error was harmless. Finding no other error, we affirm.

FACTS

In June 2019, Sharon Gorog obtained a no-contact order restraining her nephew Landes from contacting her or coming within 1,000 feet of her home for

two years. Landes attended the court hearing, signed the original no-contact order, "acknowledge[d] receipt of [the] order," and "was served with [a] copy" of the order "in open court."

Gorog lives with her sister, Linda Vasser. Vasser is the mother of Landes and Alisha Ball. On July 19, 2019, Ball called her mother and overheard Landes yelling at Gorog in the background. Ball ended the call with her mother and immediately called 911 to report Landes was violating the no-contact order with Gorog. Ball told the 911 operator that her mother and aunt live together, that she could hear her brother "yelling and screaming" at her aunt, and that her aunt "has a protection order against my brother." The King County Sheriff's Office sent deputies to investigate.

Deputy Valerie Kelly and Deputy Jeffery Thomas responded to Gorog and Vasser's home. The deputies first met Gorog at the side door of the home. She whispered to Deputy Thomas, " 'He's inside.' " The deputies then entered the home and Deputy Thomas found Vassar in a bedroom. She told him, " 'He's not here.' " But Deputy Kelly soon found Landes hiding in a closet in another bedroom.

The State charged Landes with DV FVCO. Before trial, Landes moved in limine to exclude Ball's 911 call and Gorog's "initial statement to the police" that "Landes was in the house" as a violation of the "Confrontation Clause"[1] and hearsay. The court denied Landes' motion to exclude Ball's 911 call, ruling that it was not a testimonial statement under the Confrontation Clause and that it was

---

[1] U.S. CONST. amend VI; WASH. CONST. art. I, § 22.

2

admissible under the excited utterance exception to hearsay. The State acknowledged it would run into a "potential confrontation issue" with Gorog's statement if she did not testify. So the court granted Landes' motion to exclude Gorog's statement unless she testified.

At trial, the parties stipulated that Landes and Gorog were "family members."[2] The State offered and the court admitted into evidence a certified copy of the June 2019 no-contact order. And the State played a redacted version of Ball's 911 call for the jury,[3] though Ball did not testify. Landes again objected to its admission.

Neither Gorog nor Vasser testified. Deputy Kelly and Deputy Thomas both testified about finding Landes in Gorog's house. Deputy Thomas testified that when he approached the house, Gorog was just outside the side door and whispered, " 'He's inside.' " Deputy Thomas then testified that inside the home, he found Vasser in a bedroom and she told him, " 'He's not here.' " Landes objected to both statements as hearsay and the court sustained both objections.

Before closing arguments, Landes moved for a mistrial based on Deputy Thomas' testimony that Gorog told him Landes was in the house. The court agreed the testimony was "a violation of the motions in limine" but denied the motion and instead instructed the jury to disregard Deputy Thomas' testimony about both Gorog's and Vasser's statements to him.

---

[2] The parties also stipulated that Landes had two prior convictions "for violating the provisions of a court order prior to 7/19/19," a necessary element of FVCO. RCW 26.50.110(5).

[3] The court excluded a portion of the 911 recording where Ball tells the operator she is "scared to death" of her brother and "trembling."

A jury convicted Landes of DV FVCO. The court imposed a drug-offender sentencing alternative (DOSA), ordering that Landes serve 30 months in prison and 30 months of community custody. The court imposed another 12 months of community custody "or the difference between the term of confinement and the statutory maximum sentence, whichever is less," should Landes fail to complete or be terminated from the DOSA program.

Landes appeals.

ANALYSIS

Confrontation Clause

Landes argues that the trial court erred by admitting the recording of Ball's 911 call. The State "concedes that admitting the 911 call when [Ball] did not testify was inconsistent with Landes's right to confrontation" because her statements were testimonial. But it argues that the error was harmless. We accept the State's concession that the trial court erred by admitting the 911 recording and agree that the error was harmless.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to confront and cross-examine witnesses. The Confrontation Clause provides that the State can present an absent witness' testimonial out-of-court statements only if the witness is unavailable and the defendant had a prior chance to cross-examine the witness. Crawford v. Washington, 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We review alleged Confrontation

Clause violations de novo.  State v. Kronich, 160 Wn.2d 893, 901, 161 P.3d 982 (2007); State v. McDaniel, 155 Wn. App. 829, 839, 230 P.3d 245 (2010).

A statement is testimonial if the speaker's primary purpose was to create an out-of-court substitute for trial testimony.  State v. Scanlan, 193 Wn.2d 754, 766, 445 P.3d 960 (2019).  A statement amounts to an out-of-court substitute for trial testimony if its primary purpose was (1) to establish or prove past events potentially relevant to later criminal prosecution, (2) to investigate a possible crime, (3) to create a record for trial, or (4) to create or gather evidence for prosecution.  Scanlan, 193 Wn.2d at 767 (citing Davis v. Washington, 547 U.S. 813, 822, 830, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006); Michigan v. Bryant, 562 U.S. 344, 358, 131 S. Ct. 1143, 179 L. Ed. 2d. 93 (2011); Ohio v. Clark, 576 U.S. 237, 246, 249, 135 S. Ct. 2173, 192 L. Ed. 2d 306 (2015)).  Statements are nontestimonial when made during police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency.  Davis, 547 U.S. at 822.  The State has the burden to show that statements are nontestimonial.  State v. Koslowski, 166 Wn.2d 409, 417 n.3, 209 P.3d 479 (2009).

Even if the trial court admits a statement in violation of a defendant's confrontation rights, we will not reverse a conviction if the error was harmless.  State v. Jasper, 174 Wn.2d 96, 117, 271 P.3d 876 (2012).  Under the harmless error standard, the State must show " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' "  Jasper, 174 Wn.2d at

5

117 (quoting Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)).

> Whether such an error is harmless in a particular case depends upon a host of factors, . . . includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).  When " 'overwhelming untainted evidence' " necessarily leads to a finding of guilt, Washington courts deem a constitutional error harmless.  State v. Lui, 179 Wn.2d 457, 495, 315 P.3d 493 (2014).

Here, Ball told the 911 operator, "I was just on the phone with my mother . . . . My aunt and my mother live in the house at the address I just gave you.  My aunt has a protection order against my brother. . . . I could hear my brother calling her an f'ing B,[4] and . . . all kinds of things."  Ball then gave the operator Landes' full name and date of birth and Gorog's and Vasser's full names.  Ball's statements were testimonial because the main purpose of her call was to provide information to investigate a possible crime.  And nothing in Ball's statements suggested Gorog or Vasser were in danger of physical harm, creating an ongoing emergency.  See Davis, 547 U.S. at 827 (a plain call for help against a bona fide physical threat is a clear example of circumstances objectively

---

[4] Fucking bitch.

6

indicating an ongoing emergency). The trial court erred in admitting the recording of Ball's 911 call.[5]

Even so, the record here shows that the error was harmless. To convict Landes of DV FVCO, the State had to prove:

> (1) That on or about July 19, 2019, there existed a no-contact order applicable to [Landes];
> (2) That [Landes] knew of the existence of this order;
> (3) That on or about said date, [Landes] knowingly violated a provision of this order;
> (4) That at the time of the violation, [Landes] had twice been previously convicted for violating the provisions of a court order; and
> (5) That [Landes'] act occurred in the State of Washington.

The State also had to prove Landes committed the violation against a family or household member.

In her 911 call, Ball told the operator that (1) Gorog is Landes' aunt, (2) Landes was at Gorog's house, and (3) there was a court order prohibiting Landes from contacting Gorog. But those facts were undisputed. And other untainted evidence overwhelmingly established each fact. At trial, the parties stipulated that "Sharon Gorog and Mr. Landes are family members," two deputies testified that they found Landes hiding in Gorog's home and arrested him there, and the State offered and the court admitted as evidence a certified copy of the no-contact order showing Gorog as the protected party and Landes as the

---

[5] Because we conclude that the 911 call was testimonial, we need not consider whether the trial court erred in admitting the 911 call as an excited utterance. State v. Kirkpatrick, 160 Wn.2d 873, 882, 161 P.3d 990 (2007) ("[T]he existence of an applicable hearsay exception is not dispositive as to the admissibility at trial. . . . [T]he Confrontation Clause requires another layer of analysis.").

restrained party. The trial court's error admitting the 911 call was harmless given the overwhelming untainted evidence.[6]

Motion for Mistrial

Landes argues that the court erred by denying his motion for mistrial after Deputy Thomas testified in violation of an order in limine. We disagree.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). We will reverse the trial court only if there is a substantial likelihood the trial irregularity prompting the motion affected the jury's verdict. State v. Rodriguez, 146 Wn.2d 260, 269-70, 45 P.3d 541 (2002).

A trial court has broad discretion to rule on irregularities during trial because it is in the best position to determine whether a trial irregularity caused prejudice. State v. Wade, 186 Wn. App. 749, 773, 346 P.3d 838 (2015); State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). A trial court should grant a mistrial when an irregularity in the trial proceedings is so prejudicial that it deprives the defendant of a fair trial. State v. Babcock, 145 Wn. App. 157, 163, 185 P.3d 1213 (2008). We consider three factors to determine whether an irregularity warrants a new trial: (1) the seriousness of the irregularity, (2) whether the statement was cumulative of other properly admitted evidence, and (3) whether an instruction could cure the irregularity. State v. Perez-Valdez, 172 Wn.2d 808, 818, 265 P.3d 853 (2011).

---

[6] At oral argument, Landes claimed Ball's 911 call was the only evidence establishing that Gorog lived at the address where deputies found Landes. But the record shows that the court admitted Gorog's driver's license as an exhibit and it bore the same address. Deputy Thomas also testified that he had been at that address before and "knew [Gorog] lived there."

Before trial, Landes moved in limine to exclude evidence that Gorog told police, " 'He's inside.' " The court granted the motion "should Ms. Gorog not testify." Gorog did not testify at trial. Even so, Deputy Thomas improperly testified to her statement.

While Deputy Thomas' testimony violated the court's order in limine, the irregularity was not serious enough to warrant a new trial. The testimony was cumulative of other evidence—Deputy Thomas and Deputy Kelly both testified that they found Landes hiding in a closet in the house. And the court instructed the jury to "disregard this particular testimony" and not "discuss this evidence during your deliberation or consider it in reaching your verdict." We presume jurors follow the court's instructions. Emery, 174 Wn.2d at 766. The trial court did not abuse its discretion by denying Landes' motion for mistrial.

Cumulative Error

Landes contends he is entitled to a new trial because the cumulative effect of all his asserted errors denied him a fair trial. "Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." Emery, 174 Wn.2d at 766. Cumulative error "is limited to instances where there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

Here, the court's admission of Ball's 911 call contrary to Landes' confrontation right is the only trial error. This single error that we determined was

harmless cannot support reversal under the cumulative error doctrine.[7] Greiff, 141 Wn.2d at 929.

Unlawful Sentence

Landes argues that his sentence is unlawful because it exceeds the statutory maximum. Whether a sentencing court exceeded its statutory authority under the Sentencing Reform Act of 1981, chapter 9.94A RCW, is an issue of law we review de novo. In re Postsentence Review of Milne, 7 Wn. App. 2d 521, 523, 435 P.3d 311 (2019).

A court exceeds its authority if it imposes an aggregate term of confinement and community custody beyond the statutory maximum sentence. RCW 9.94A.701(10); State v. Boyd, 174 Wn.2d 470, 472, 275 P.3d 321 (2012) (citing former RCW 9.94A.701(9) (2010)). If a court sentences an offender to a term of confinement plus a term of community custody greater than the statutory maximum for the crime, it must reduce the sentence to comply with the law. Boyd, 174 Wn.2d at 473.

The jury convicted Landes of FVCO, a class C felony with a 60-month statutory maximum. RCW 26.50.110(5); RCW 9A.20.021(1)(c). With an offender score of 10, Landes' standard-range sentence was 60 months. The court imposed a prison-based DOSA under RCW 9.94A.660. That alternative requires confinement of "one-half the midpoint of the standard sentence range" and community custody for the other half. RCW 9.94A.662(2). So the court

---

[7] Landes asks us to consider all trial irregularities in our cumulative error analysis, whether or not the irregularities amount to legal error. But he cites no authority that persuades us to do so. See RAP 10.3(a)(6).

sentenced Landes to 30 months' confinement and 30 months of community custody. But if Landes "fails to complete" or "is administratively terminated from" his DOSA program, he must serve the unexpired term of his sentence in confinement. RCW 9.94A.662(4). So the court ordered an additional term of community custody of "12 months or the difference between the term of confinement and the statutory maximum sentence, whichever is less," if Landes fails to complete or is administratively terminated from the DOSA program.

Landes argues that the additional 12 months of community custody exceeds the statutory maximum penalty of 60 months. But the language of the sentence itself limits any additional term of community custody to "the difference between the term of confinement and the statutory maximum sentence, whichever is less." That is, it precludes any total term of custody longer than 60 months.[8] If Landes successfully completes his DOSA program, he does not trigger the additional 12 months of community custody.[9] But if Landes fails to complete his DOSA or is administratively terminated from it, the DOSA statute mandates he serve the balance of his 60-month sentence in confinement.[10] If that occurs, the difference between Landes' term of confinement and the statutory maximum would be 0, and he would not serve any of the additional term

---

[8] Citing Boyd, 174 Wn.2d at 473, and State v. Bruch, 182 Wn.2d 854, 862, 346 P.3d 724 (2015), Landes also argues that the language used in the judgment and sentence gives the Department of Corrections (DOC) discretion to determine his term of community custody. He is incorrect. The language reflects the trial court's determination that should DOC revoke the DOSA sentence, the length of community custody will be "the difference between the term of confinement and the statutory maximum sentence, whichever is less."

[9] See RCW 9.94A.662(2)(e).

[10] RCW 9.94A.662(4).

of community custody. The trial court's sentence does not exceed the statutory maximum penalty for FVCO.

Because the court's error admitting the 911 call was harmless, the court did not err by denying Landes' motion for a mistrial, and cumulative error does not apply, we affirm Landes' DV FVCO conviction. And because Landes' sentence does not exceed the statutory maximum, we affirm his sentence.

Brenner, J

WE CONCUR:

Chun, J.

Verellen, J