IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

　　　　　　　　　Respondent,

　　　v.

RICHARD ERIC NESBIT,

　　　　　　　　　Appellant.

No. 83244-1-I

DIVISION ONE

UNPUBLISHED OPINION

　　　　COBURN, J. — Nesbit was convicted of one count of assault in the second degree with a deadly weapon after attacking a sleeping bus passenger with a hammer, unprovoked. Nesbit argues that the trial court made an unconstitutional judicial comment on the evidence in advising the jury that while they may find the video evidence disturbing, they were not permitted to communicate about the case. Nesbit also argues that a police officer's testimony, that Nesbit was read Miranda[1] warnings prior to identifying himself to police, was unfairly prejudicial requiring a mistrial despite the fact the court granted defense's objection, struck the testimony, and instructed the jury to disregard. Nesbit contends that the trial court abused its discretion in denying his motions for a mistrial. We disagree and

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Citations and pincites are based on the Westlaw online version of the cited material

affirm.

FACTS

On March 22, 2020, Kent police officers responded to a report that a man with a dog was standing outside of an Alzheimer's care facility threatening to break the front window with a hammer. At least three officers arrived and, with their weapons drawn, instructed the man to lay on the ground with his arms out. The man complied, so officers handcuffed him and seated him on the push bar at the front of a police vehicle to speak to him. An officer read Miranda rights to the man, who agreed to speak. During this interaction, the man identified himself as Richard Nesbit. Nesbit was subsequently released and told he would receive a citation for misdemeanor harassment in the mail.

Later that day, near midnight, Nesbit, wearing the same clothes and with the same dog, as seen at the Alzheimer's facility, boarded a King County Metro bus. Nesbit sat toward the back of the bus with one person sitting in the row ahead of him, who appeared to be asleep with his head against the window. The bus proceeded for several minutes without incident.

The bus driver testified that her attention was grabbed when in the mirror she noticed the two men were upright, grabbing at each other, and coming toward her at the front of the bus. The victim of the attack stated "This guy is crazy. He has a hammer." In the scuffle, the bus driver saw what appeared to her to be a "big stick." The two men appeared to be fighting over the hammer. The driver was "very scared" and stopped the bus, opening the door for one or both of the men to get off the bus to break up the fight. The victim of the attack

2

got off the bus and the bus drove away with Nesbit still on it.  The bus continued until it reached the last stop, at Kent Station, where Nesbit and the other passengers exited.

Security cameras installed on the bus captured the attack on video.  The video shows Nesbit board the bus with his dog and take a seat toward the back at approximately 11:46 p.m.  The victim can be seen sitting in the row ahead of Nesbit.  The victim appears to fall asleep with his head against the window a short time later.  Nesbit remains seated and appears calm for several minutes. At 11:57 p.m. Nesbit pulls a hammer out of a bag on the seat next to him and strikes several blows to the victim's head.  The victim wakes up, shields his head with his arms, then stands up and grabs the hammer in Nesbit's hands.  The two grapple over the hammer while moving toward the front of the bus.  The bus stops and the victim exits through the front door of the bus at 11:58 p.m.  Nesbit then returns to his seat, still holding the hammer, and the bus proceeds.

The driver did not immediately call emergency services, but after finishing her shift, wrote a "security incident report."  This report was assigned to detectives with the King County Sheriff's Office Metro Transit Police Division to investigate.  Detectives were able to identify Nesbit as the attacker, based on the body worn camera footage of his interaction with Kent police earlier that day and the dog he had with him at both incidents.  They were unable to locate the victim of the attack.  Nesbit was subsequently charged with one count of assault in the second degree with a deadly weapon.

Prior to trial, the defense submitted a motion in limine to exclude all

evidence of Nesbit's interaction with Kent police on March 22, 2020 under ER 404(b), arguing that it was unfairly prejudicial evidence of a prior bad act.  The trial court granted the motion in part, explaining the overall encounter is "more prejudicial than probative."  The court excluded the video of the encounter, but allowed still photos taken from the body worn camera footage to be used for the purpose of identification.  The trial court also limited the testimony of the responding officer by ruling that "[t]he officer can testify that, 'I encountered him, I was questioned, and he provided the name', you know, things of those – of that nature can still be admitted to draw the connection between the earlier contact and the weight, and in the allegation that we're dealing with Mr. Nesbit was identified."

The case proceeded to trial in August 2021.  The video of the attack was admitted and displayed for the jury on the first day of trial.  At the close of the day, before dismissing the jury, the trial court stated:

> I do want to mention to you, given my admonition that you can't speak about any of the facts related to the case, there may be some things in today's video that are disturbing and will stick with you.  And I want you to know you can reach out to friends or family to say, 'I'd like some company' or 'I don't want some company,' but I'm gonna [sic] ask you to abide by the admonition that you not – not speak about things that we're – we're looking at or considering in today's trial.  What I'm trying to say is take care of yourselves.

The defense then objected outside the presence of the jury, explaining the concern that it was a judicial comment on the evidence and implied to jurors there was something to be concerned about in the video.  The defense subsequently moved for a mistrial.  The trial court reserved ruling on the motion.

The next day, Kent police officer Matthew Levi testified about his

4

interaction with Nesbit at the care facility on March 22.  When asked how he came to learn Nesbit's name, Levi stated "during the course of our interaction, he provided his name and date of birth to me following Miranda being read to him." The defense immediately objected and moved to strike the comment as violating the motion in limine.  The trial court sustained the objection and struck the statement from the record.  It also instructed the jury to disregard the comment. The defense moved for a mistrial on the basis of Levi's testimony regarding Miranda rights.  The trial court again reserved ruling.

After argument from both parties, the trial court denied the motion for a mistrial regarding judicial comment, explaining that the thrust of the comment was to implore the jurors not to communicate about the case, but to lean on their support systems if they needed to process what they had viewed.  The trial court also explained that the comment did not go to any issues in the case, as the main issue was identification of the attacker, not the severity of the assault.  The court finally reasoned that by the end of the trial the jurors would have been instructed to disregard any judicial comments on the evidence three separate times.

The trial court also denied the motion for mistrial on the basis of Officer Levi's statement about Miranda warnings.  The court reasoned that it sustained the objection to the comment, instructed the jury to disregard it, and that the jury had both received a limiting instruction telling them they were not permitted to "speculate or consider the circumstance under which the person in the photographs came into contact with police officers" immediately before Levi's

testimony and would receive it again before deliberation.

Before deliberation, the jury instructions addressed both areas of concern. Instruction number 1 charged "[i]f evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict." Instruction number 7 mirrored the instruction preceding Levi's testimony, charging that

> The still photographs marked at Exhibit 5 are being offered only for the purpose of identification. You are not to speculate or consider the circumstance under which the person in the photographs came into contact with police officers or in which the photographs were taken. Any such circumstances are relevant for purposes of this trial only in so far as you determine the evidence admitted does or does not identify Mr. Nesbit in relation to the alleged charge in this trial.

In instruction number 1, jurors were told that

> Our state constitution prohibits a trial judge from making a comment on the evidence. It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

The jury found Nesbit guilty of assault in the second degree and found that he was armed with a deadly weapon at the time he committed the assault. Nesbit now appeals arguing that the trial court abused its discretion in denying his motions for a mistrial based on the judicial comment and mention of <u>Miranda</u> warning.

## DISCUSSION

### Standard of Review

"Decisions involving evidentiary issues lie largely within the sound

discretion of the trial court and ordinarily will not be reversed on appeal absent a showing of abuse of discretion." State v. Nava, 177 Wn. App. 272, 289, 311 P.3d 83 (2013). "Under an abuse of discretion standard, the reviewing court will find error only when the trial court's decision (1) adopts a view that no reasonable person would take and is thus 'manifestly unreasonable,' (2) rests on facts unsupported in the record and is thus based on 'untenable grounds,' or (3) was reached by applying the wrong legal standard and is thus made 'for untenable reasons.'" State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012) (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

### Miranda Testimony

Nesbit asserts that the trial court abused its discretion in failing to grant his motion for a mistrial following an officer's testimony that he was read Miranda rights. Nesbit contends that this statement was so prejudicial that it could not be cured by instruction and required a new trial. We disagree.

In this case, the prosecution sought to admit evidence of Nesbit's interaction with Kent police officers prior to the assault on the bus to prove his identity. While evidence of other crimes, wrongs, or acts are inadmissible to prove character or propensity to commit a crime, it is admissible for other purposes, including identity. ER 404(b). Nesbit moved in motions in limine to exclude the entire episode in Kent. The court limited testimony about the Kent interaction to the fact the officer encountered Nesbit, questioned him, and Nesbit provided his name. Given Nesbit's motion was to exclude the entire encounter, it

7

follows that the court's ruling restricted testimony as to only what the court stated could be admitted.

Violating a ruling in limine generally amounts to a serious trial irregularity. State v. Thompson, 90 Wn. App. 41, 46, 950 P.2d 977 (1998). A trial court has broad discretion to rule on irregularities during trial because it is in the best position to determine whether the irregularity caused prejudice. State v. Wade, 186 Wn. App. 749, 773, 346 P.3d 838 (2015); State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). A trial court should grant a mistrial when an irregularity in the trial proceedings is so prejudicial that it deprives the defendant of a fair trial. State v. Babcock, 145 Wn. App. 157, 163, 185 P.3d 1213 (2008). We consider three factors to determine whether an irregularity warrants a new trial: (1) the seriousness of the irregularity, (2) whether the statement was cumulative of other properly admitted evidence, and (3) whether an instruction could cure the irregularity. State v. Perez-Valdez, 172 Wn.2d 808, 818, 265 P.3d 853 (2011).

In context, the mention of Miranda did not amount to a serious trial irregularity that is so prejudicial it required a mistrial. Thompson, 90 Wn. App. at 46. The witness gave improper testimony, but the trial court did not admit it and immediately instructed the jury to disregard the testimony, followed by additional curative instruction before deliberation began.

Prior to hearing from Levi, the jury was instructed that they were "not to speculate or consider the circumstance under which the person in the photographs came into contact with police officers, or in which the photographs

8

were taken" and that they were only to determine whether or not the evidence identified Nesbit.

During his testimony, Levi did not testify about why he was interacting with Nesbit, whether Nesbit was restrained during the interaction, or whether Nesbit was arrested. When asked how he learned Nesbit's name, Levi stated "during the course of our interaction, he provided his name and date of birth to me following Miranda being read to him." The defense objected and moved to strike, which the trial court sustained and granted. The trial court then immediately instructed the jury to disregard the reference to Miranda. Levi then testified that after their interaction Nesbit was permitted to go about his business and "left the premises of where we had contacted him." This testimony would prevent any juror from concluding that Nesbit had engaged in wrongful behavior that led to an arrest.

Before deliberation, the jury was instructed "[i]f evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict." They were again instructed that they were not to "speculate or consider" why Nesbit had come into contact with Kent Police earlier in the day and that this evidence was for the limited purpose of identification of Nesbit.

Juries are presumed to follow all instructions that the trial court gives to them. State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001). Even if the testimony about Miranda warnings created a risk of prejudice, the court's oral instructions at the time it sustained the objection and the written trial instructions cured the irregularity.

<u>Judicial Comments</u>

Nesbit next argues that in admonishing the jury that they may find some parts of the video evidence "disturbing," the trial court unconstitutionally commented on the evidence necessitating reversal of the conviction. We disagree.

Trial judges are constitutionally prohibited from commenting on evidence. CONST. art. IV, § 16. The purpose of this rule is to prevent the jury from being influenced by a trial judge's personal opinion on the credibility, weight, or sufficiency of the evidence. <u>State v. Jacobsen</u>, 78 Wn.2d 491, 495, 477 P.2d 1 (1970). To be a comment on the evidence, it must appear that the trial court's attitude toward the merits of the case is reasonably inferable from the nature or manner of the court's statements. <u>State v. Lane</u>, 125 Wn.2d 825, 889 P.2d 929 (1995). A judge's opinion may be conveyed directly or by implication, based on the particular facts and circumstances of the case. <u>Jacobsen</u>, 78 Wn.2d at 495.

Here, Nesbit argues that when the trial court told the jury "there may be some things in today's video that are disturbing and will stick with you" before admonishing them not to discuss the case outside of court it amounted to a comment on the evidence prohibited by article IV, § 16. Nesbit asserts that this conveyed to the jury that the conduct amounted to assault in the second degree, rather than the lesser included offense of assault in the fourth degree.

However, the distinguishing factor between assault in the second degree with a deadly weapon and assault in the fourth degree is not simply the severity or how "disturbing" the assault was to viewers. To convict of assault in the

second degree, as charged here, the State must prove that the defendant assaulted another person with a deadly weapon. RCW 9A.36.021. The jury was instructed that to convict Nesbit of this offense they must find beyond a reasonable doubt that:

> (1) [O]n or about March 22, 2020, the defendant assaulted John Doe, an unknown person, with a deadly weapon: to wit, a hammer; and
>
> (2) That this act occurred in the State of Washington.

The jury was also instructed that if they did not find beyond a reasonable doubt that the defendant was guilty of assault in the second degree, they should consider assault in the fourth degree. They were instructed that to convict of assault in the fourth degree, they must find beyond a reasonable doubt that:

> (1) [O]n or about March 22, 2020, the defendant assaulted John Doe, an unknown person; and
>
> (2) That this act occurred in the State of Washington.

The distinguishing factor at issue in this case is the use of a deadly weapon, not the severity of the assault.

The trial judge's remark here was not an unconstitutional comment on the evidence. The judge made no remark on the presence of a deadly weapon or whether an assault occurred. The judge only stated that the jury may find some parts of the video evidence "disturbing" and that they should lean on their support systems if they found it difficult to deal with. This statement did not convey the trial court's personal opinion on the credibility, weight, or sufficiency of the evidence and was not unconstitutional. As noted by the State, and reflected in the record, Nesbit's own defense attorney began opening argument with

11

> "Well, let's just be straight up with each other from the start. Okay? You're gonna [sic] see a video of an attack that happened on the bus. The video is disturbing."

In a similar unpublished case, this Court found that where a trial court warned the jury that photograph exhibits of a domestic violence victim's injury were "somewhat graphic" and that jurors "may want to look at it quickly or not at all" did not rise to the level of an impermissible comment because they did not go to the weight, credibility, sufficiency, or materiality of the evidence. State v. Tek, No. 42227-1-II, slip op. at 9 (Wash. Ct. App. Apr. 23, 2013) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2042227-1-II%20%20Unpublished%20Opinion.pdf. There the court noted that the statements "did not indicate that the photo was more or less important or probative, rather only that it was potentially disturbing to observe" which was not an issue at trial. Tek, No. 42227-1-II, slip op. at 9. The court stated "it is more likely that the judge – like most people – was cautious of others' sensitivity to blood and exposed tissue." Tek, slip op. at 9. This is analogous to this case, where whether the assault was "disturbing" was not at issue, but the judge appears to have been concerned about the effect the video of the assault would have on the jurors.

The trial court's comment did not amount to an unconstitutional judicial comment on the evidence. Whatever risk that the jury could view it as such was cured with jury instruction number 1 advising that it would be improper for the judge to express the judge's personal opinion about the value of evidence, that the judge did not intentionally do so, and that the jury should disregard it if it

appeared to the jury the judge had done so.

CONCLUSION

The trial court did not abuse its discretion in denying Nesbit's motions for a mistrial.

We affirm.

_____Coburn, J._____

WE CONCUR:

_____Birk, J._____       _____Brennan, J_____